## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                           :
MARK DENNIS ZURAWSKI,          :          CIVIL ACTION
        Plaintiff,                         :
                                           :          No. 2:08-cv-05040
        v.                                 :
                                           :
SOUTHEASTERN PENNSYLVANIA       :
TRANSPORTATION AUTHORITY,       :
        Defendant.                         :
_____:

## MEMORANDUM

YOHN, J.                                                              May 10, 2010

        Plaintiff, Mark Dennis Zurawski, asks the court to set aside a decision by an arbitration

board that affirmed the termination of his employment with defendant, the Southeastern

Pennsylvania Transportation Authority ("SEPTA").  In his "Petition for Review in the Nature of

a Second Amended Complaint" (the "Second Amended Petition") under the Railway Labor Act,

45 U.S.C. §§ 151-188 (the "RLA"), Zurawski claims that the court should set aside the

arbitrators' decision because it was tainted by "fraud or corruption."  SEPTA has filed a motion

pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Second Amended Petition.  SEPTA argues

that Zurawski has failed to state a claim that could warrant review under the extremely narrow

standards of the RLA.  I agree with SEPTA that, even accepting Zurawski's allegations as true,

none of the conduct he alleges to have been improper rises to the level of fraud or corruption

under the RLA.  Accordingly, I will grant SEPTA's motion and will dismiss Zurawski's Second

Amended Petition with prejudice.

## I.    Factual and Procedural Background

The allegations of the Second Amended Petition, which the court assumes to be true for the purposes of this 12(b)(6) motion, are summarized as follows.[1]

On January 29, 2007, Zurawski had a disagreement with a co-worker at SEPTA.  (Second Amended Petition ¶ 5.)  The two had a heated exchange that concluded with the co-worker backing away from Zurawski. (Id. ¶ 11.)  According to Zurawski, the co-worker was the instigator of the disagreement and exacerbated it through insults and physical aggression.  (Id. ¶¶ 6-10.)  Nonetheless, it was Zurawski who, the next morning, was suspended and, after an investigation, terminated.  (Id. ¶¶ 12-13.)

Zurawski filed a grievance challenging this termination.  (Id. ¶ 14.)  Pursuant to the terms of the collective bargaining agreement between SEPTA and Zurawski's union (the Transport Workers Union of America, Local 2013), an arbitration was held on July 18, 2008, before three arbitrators:  one chosen by SEPTA (Jeffrey T. Sheridan); another chosen by Zurawski's union (Charles H. Little); and a third, neutral arbitrator, from the Special Board of Adjustment (Robert L. Douglas).  (Ex. A 1-2.)[2]

---

[1]  Zurawski attached to the Second Amended Petition the transcript of the arbitration (Exhibit A), the written decision of the arbitration board (Exhibit B), the union-chosen arbitrator's dissenting opinion (Exhibit C), and portions of the collective bargaining agreement between SEPTA and Zurawski's union (Exhibit D).  Pursuant to Rule12(b)(6), the court may consider such exhibits along with the allegations contained in the Second Amended Petition. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (to decide a motion to dismiss, courts may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record").

[2]  Under the RLA, an arbitration board consists initially of an employer representative and a union representative.  See 45 U.S.C. § 153.  A neutral third party may be selected as a "referee" to sit with the other two members to make an award.  Id.  Thus, an arbitration board under the RLA is "'bipartisan rather than impartial and disinterested.'"  United Steelworkers of Am. Local 1913 v. Union R.R. Co., 648 F.2d 905, 913 (3d Cir. 1981) (quoting Arnold v. United Air Lines, Inc., 296 F.2d 191, 195 (7th Cir. 1961)); see also Brown v. Trans World Airlines, Inc., 569 F.

On September 22, 2008, a two-person majority of the arbitrators (Sheridan and Douglas) rendered a decision against Zurawski. (Ex. B.) On October 27, 2008, Zurawski filed a complaint in this court against Douglas. (Docket No. 3.) A short time later, on November 30, 2008, Little filed a dissent to the arbitration board's decision. (Second Amended Petition ¶ 15; Ex. C.)

Douglas filed a motion to dismiss on February 26, 2009. (Docket No. 7.) On March 23, 2009, Zurawski filed an amended complaint naming as defendants, along with Douglas, the Special Board of Adjustment, Sheridan, Little, SEPTA, and Zurawski's union. (Docket No. 9.) On April 6, 2009, Douglas and the Special Board of Adjustment filed a motion to dismiss. (Docket No. 11.) The other defendants filed motions to dismiss on May 7, 2009. (Docket Nos. 21-23.) On June 15, 2009, the court granted the motion to dismiss of Douglas and the Special Board of Adjustment because they were immune from suit. (Docket Nos. 28 and 29.) The court granted the motions to dismiss of Sheridan and Little on August 12, 2009, for the same reason. (Docket Nos. 40 and 41.)

The court held oral argument on the motions to dismiss of SEPTA and Zurawski's union on September 24, 2009. (Docket No. 47.) On September 30, 2009, with the agreement of the parties, the court ordered that the amended complaint should be treated as a Petition for Review under the RLA pursuant to 45 U.S.C. § 153 First (q). (Docket No. 50.) On October 5, 2009, at Zurawski's request, the court dismissed the action against Zurawski's union pursuant to Fed. R. Civ. P. 41(a)(2). (Docket No. 51.)

---

Supp. 247, 252 (W.D. Mo. 1983) (fraud and corruption were not shown even though board's employer representative had participated in termination of plaintiff, "because the plaintiff is not entitled to a neutral individual as the company representative . . . ."), aff'd, 746 F.2d 1354 (8th Cir. 1984).

On October 13, 2009, Zurawski filed his Second Amended Petition, naming only SEPTA as a defendant. (Docket No. 52.) In the Second Amended Petition, Zurawski claims that the decision of the arbitrators was the product of fraud or corruption. (Second Amended Petition ¶ 16.) Zurawski's allegations of fraud or corruption fall into three categories: (1) allegations against SEPTA for its investigation of the disagreement; (2) allegations against SEPTA for its conduct in preparing for and presenting its case at the arbitration; and (3) allegations against the arbitration board, and Douglas in particular, for its conduct of the arbitration and for the manner in which it reached its decision.

First, Zurawski contends that SEPTA's investigation of the disagreement was insufficient. According to Zurawski, SEPTA did not seek a statement from him and did not allow him to prepare one "without intimidation." (Id. ¶¶ 16a, 16m.) He alleges that, in contrast, SEPTA allowed an opposing witness, James M. Andrews, to prepare a statement at his leisure at home. (Id. ¶ 16m.) Zurawski also alleges that SEPTA's investigator, Gary Fisher, had been accused of impropriety in previous investigations of other matters. (Id. ¶ 16b.)

Second, Zurawski contends that SEPTA's conduct in preparing for and presenting its case at the arbitration was improper. He alleges that SEPTA called several witnesses at the arbitration who were not made available to Zurawski or his union representatives beforehand for deposition. (Id. ¶ 16d.) According to Zurawski, SEPTA also prevented him from calling several non-union witnesses who would have provided testimony in support of him. (Id. ¶ 16e.) Zurawski further alleges that SEPTA coordinated the testimony of witnesses prior to the arbitration and then blocked inquiry into that coordination by claiming attorney-client privilege. (Id. ¶ 16f.)

Third, Zurawski contends that the arbitration board did not conduct the arbitration properly. He alleges that the arbitration board did not advise him of his right to obtain

independent counsel and that, as a result, he was not represented by an attorney.  (Id. ¶ 16c.)  He also alleges that almost none of the testifying witnesses saw what had caused the disagreement and those who did provided little insight.  (Id. ¶ 16h.)  He further alleges that the arbitration board was supposed to sequester witnesses but allowed Fisher to testify, even though Fisher had been in attendance for the testimony of previous witnesses and even though SEPTA had not identified Fisher as a witness.  (Id. ¶ 16j.)  Zurawski also alleges that the presence of Fisher in the room intimidated other witnesses.  (Id.)  In addition, Zurawski alleges that the arbitration board improperly allowed SEPTA to enter position statements into evidence that contained never-before-seen hearsay reports that were over three years old and that were written by employees who no longer worked for SEPTA.  (Id. ¶ 16k.)

As to the neutral arbitrator, Douglas, Zurawski alleges that Douglas spoke to witnesses before they testified, and that these conversations unfairly colored Douglas's decision.  (Id. ¶ 16i.)  Zurawski also alleges that Douglas allowed SEPTA five hours to present its case but only allowed Zurawski one hour, unless Zurawski was willing to continue the hearing over five months later.  (Id. ¶ 16l.)  Zurawski further alleges that Douglas made a settlement offer to Zurawski that violated Article III, Section 403(i), of the collective bargaining agreement between SEPTA and Zurawski's union because it sought to add and/or subtract terms from the agreement only as they applied to Zurawski.  (Id. ¶ 18.)  Zurawski alleges that Douglas knew or should have known that the offer violated the agreement but nevertheless presented it as non-negotiable and pressured Zurawski to accept it.  (Id. ¶¶ 19-20.)

Zurawski also alleges that the written decision of the arbitration board makes false or inappropriate statements that:

(1) the parties were afforded a full opportunity to offer evidence and argument, even though Zurawski was not afforded sufficient time to conclude his case that day;

(2) the witnesses were sequestered, even though Fisher was not sequestered;

(3) the co-worker with whom Zurawski had the disagreement testified credibly, even though there was substantial testimony that the co-worker did not get along with a number of other employees, a fact that SEPTA knowingly misrepresented at the arbitration;

(4) eyewitness testimony was "overwhelmingly consistent," even though little, if any, of the testimony addressed the disputed portion of the disagreement – *i.e.*, the events leading up to it;

(5) witness James M. Andrews was "credible," even though Andrews "wasn't really paying too much attention" to the disagreement, did not recall preparing his witness statement, was allowed to prepare his statement at his leisure from home rather than at the worksite, was allowed to include hearsay information in his version of the events, and was biased against Zurawski because he was a friend of the co-worker with whom Zurawski had the disagreement and did not have a good relationship with Zurawski;

(6) Zurawski's credibility was outweighed by the credibility of other witnesses;

(7) Fisher's testimony was consistent with that of the other witnesses, even though the decision fails to mention that Fisher was not sequestered and was in attendance for the testimony of the previous witnesses;

(8)     the record proves that Zurawski's co-worker did not provoke Zurawski, even though almost none of the witnesses testified about the events leading up to the disagreement;

(9)     Zurwaski failed to provide a credible reason for why he acted "so belligerently" in the disagreement, even though no credible evidence was cited that it was Zurawski who initiated the disagreement;

(10)    Zurawski failed to provide a credible reason for why he stood up "from his seated position" during the disagreement, even though Zurawski did not testify to having been seated at any relevant time; and

(11)    Zurawski failed to provide a credible reason to explain "his repeated efforts to bait, goad, and provoke" his co-worker "into fighting," even though Zurawski did not testify that he baited, goaded, or provoked his co-worker.

(Id. ¶ 16n.)

Additionally, Zurawski asserts that his claims are supported by Little's dissent, in which Little was critical of Douglas, the neutral arbitrator.  (Id. ¶ 17.)  Little stated that Douglas: (1) should have disqualified himself from the case; (2) ignored witness perjury on four occasions; (3) was biased against Zurawski because Zurawski turned down a settlement offer made by Douglas; (4) gave SEPTA five hours to present its case but only gave Zurawski one hour, under threat that any additional time needed would result in a five-month delay; (5) was blinded to the evidence in favor of Zurawski; (6) was aware that SEPTA had rehearsed the testimony of witnesses in a previous arbitration and yet allowed SEPTA to claim attorney-client privilege with regard to its preparation of its witnesses in this case; (7) refused to hold an executive session to

- 7 -

resolve outstanding issues; and (8) allowed witnesses to be presented to Zurawski for the first time at the arbitration.  (Ex. C.)

On November 9, 2009, SEPTA filed a motion to dismiss the Second Amended Petition. (Docket No. 55.)  Zurawski filed a response on November 23, 2009.  (Docket No. 57.)  SEPTA filed a reply on December 3, 2009, and Zurawski filed a surreply on December 14, 2009. (Docket Nos. 58 and 59.)

## II.     Legal Standards

### A.      Standards Under Rule 12(b)(6)

In analyzing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).  "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.

This is not to be understood as imposing a probability standard at the pleading stage.  Id. ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.");  Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same).  The issue is "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'"  Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)).

In conducting this review, a court must accept all "well-pleaded" facts in the complaint as true. Fowler, 578 F.3d at 211. "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." Iqbal, 129 S. Ct. at 1954 (quoting Twombly, 550 U.S. at 557). In other words, stating a claim requires a complaint that has enough factual matter, taken as true, to suggest the required element and that provides enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element. Phillips, 515 F.3d at 235.

Thus, the general rule of pleading, Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 129 S. Ct. at 1950. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation [under Rule 8(a)(2)] to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and alterations omitted). The assumption of truth accorded to well-pleaded facts does not apply to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949.

In addition, a plaintiff must plead all allegations of fraud with particularity as to the circumstances of the alleged fraud. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1417-18 (3d Cir. 1997) (citing Fed. R. Civ. P. 9(b)). "The purpose of Rule 9(b) is to provide

notice of the 'precise misconduct' with which defendants are charged" in order to give them an opportunity to respond meaningfully to the complaint "and to prevent false or unsubstantiated charges." Rolo v. City of Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (citing Seville Indust. Mach. v. Southmost Mach., 742 F.2d 786, 791 (3d Cir. 1984)).

### B. Pleading Standards Under the RLA

Because this is an RLA case, the court does not merely ask, as it normally would under Rule 12(b)(6), "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips, 515 F.3d at 233 (internal quotation marks omitted). Instead, Zurawski must satisfy the heightened pleading standards of the RLA.

The scope of judicial review of arbitration board decisions under the RLA is among the narrowest known to law. United Steelworkers, 648 F.2d at 910. Judicial review of decisions by a "division of the Adjustment Board" (*i.e.*, by an arbitration board such as the one in this matter) is limited to the three narrow grounds set forth in 45 U.S.C. § 153 First (q). Id. at 910-911; see also Union Pac. R.R. Co. v. Sheehan, 439 U.S. 89, 93 (1978) ("'findings and order of the division shall be conclusive on the parties' and may be set aside only for the three reasons specified therein") (quoting 45 U.S.C. § 153 First (q)). A district court may set aside or remand an order only for: (1) "failure of the division to comply with the requirements of this chapter"; (2) "failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction"; or (3) "fraud or corruption by a member of the division making the order." 45 U.S.C. § 153 First (q). Otherwise, the findings and order of the arbitration board "shall be conclusive on the parties." Id.[3]

---

[3] The Third Circuit has held that a district court cannot hear a challenge to an order of an arbitration board under the RLA based upon a due process argument. United Steelworkers, 648 F.2d at 911 (the only grounds for review under the RLA are the three narrow grounds provided in

Zurawski only invokes the third ground, alleging that the decision of the arbitration board is so tainted with "fraud or corruption" that the court must set it aside. The RLA does not itself define "fraud or corruption."[4] At common law, fraud was established merely by showing knowing false representations of material fact, justifiably relied upon by the plaintiff to his detriment. <u>Pac. & Arctic Ry. and Navigation Co. v. United Transp. Union</u>, 952 F.2d 1144, 1148 (9th Cir. 1991). Courts have held that under the RLA, however, a finding of fraud or corruption requires an "extremely high degree of improper conduct" of "a greater level" than that required by the common law. <u>Id.</u> (internal quotations omitted).

The type of fraud contemplated by the RLA is the so-called "extrinsic" fraud that will cause the innocent party to lose regardless of its argument "because the case is not decided on its merits." <u>Pitts v. Nat'l R.R. Passenger Corp.</u>, 603 F. Supp. 1509, 1517 (N.D. Ill. 1985). Extrinsic fraud occurs, for example, when the employer-chosen arbitrator knowingly "fails to disclose that perjured testimony is being offered before the board," <u>id.</u> at 1517 n.1, when he or she bribes the neutral board member, <u>id.</u> at 1517, or when "the supposedly neutral arbitrator exhibits a complete unwillingness to respond, and indifference, to any evidence or argument in support of one of the parties' positions," <u>Pac. & Arctic Ry.</u>, 952 F.2d at 1148. The RLA allows review of decisions

_____

the statute; non-statutory grounds, including due process, do not exist) (citing <u>Union Pac. R.R. Co.</u>, 439 U.S. at 93-94 (rejecting appellate court's ruling that arbitration deprived plaintiff of due process)).

[4] There are few decisions in the Third Circuit interpreting the "fraud or corruption" standard of the RLA. In fact, there are "remarkably few" such decisions nationwide, and there is "corresponding little guidance" from the courts as to the nature and degree of fraud or corruption that would warrant setting aside an arbitration board's order. <u>Kinross v. Utah Railway Co.</u>, No. 2:01-CV-0010BSJ, 2006 WL 1233027, at *5 (D. Utah April 6, 2006) (internal quotation omitted). Given this dearth of cases, the court has looked outside of the Third Circuit for guidance where necessary.

tainted by fraud to enable the "district court to correct errors not preventable by the litigants themselves." Pitts, 603 F. Supp. at 1517.

In contrast, so-called "intrinsic" fraud, including "perjured testimony or mispresentations by counsel," can be brought to the arbitration board's attention at the time of the hearing. Id. Intrinsic fraud is not the kind of fraud that is judicially reviewable under the RLA because the conduct is not that of a board member. Id.; Holmes v. Nat'l R.R. Passenger Corp., No. 94-7723, 1995 WL 334334, at *3 (E.D. Pa. June 1, 1995) ("Section 153 clearly states that the fraud involved must be a fraud 'by a member of the division making the order.' This can only mean fraud by a member of the Board itself."). Thus, fraud on the part of the employer alone does not satisfy the "fraud or corruption" requirement and, even if adequately supported, cannot provide a basis for judicial relief.

In addition, because of the strong federal policy favoring arbitration, "fraud or corruption" under the RLA must be proved by clear and convincing evidence and cannot be discoverable by due diligence before or during the proceeding. Pac. & Arctic Ry., 952 F.2d at 1148; see also 9 U.S.C. § 10(a) (Federal Arbitration Act); Fed. R. Civ. P. 60(b)(3). Last, the fraud must occur in the arbitration itself. Pitts, 603 F.Supp. at 1517-18.

## III. Discussion

At the outset, the court notes that while the parties dispute whether Zurawski's allegations of fraud or corruption are sufficiently particular to satisfy the standards of Rule 9(b), the court need not address the issue as Zurawski's allegations do not even satisfy the more lenient standard of Rule 8(a)(2).[5]

---

[5] Zurawski is under the misapprehension that to state a claim under Rule 8(a)(2) he need not "plead facts" but may merely "plead conclusions, so long as the conclusions provide defendant with minimal notice of the claim." (Pl.'s Surreply 1 (quoting Frieri v. City of Chicago,

To be entitled to the relief he seeks under the RLA, Zurawski must allege facts in his Second Amended Petition sufficient to show that the alleged deficiencies in the arbitration rendered him "doomed to lose" no matter what he argued because the case was not being decided on the merits. Pac. & Arctic Ry., 952 F.2d at 1148 (quoting Pitts, 603 F. Supp. at 1517). Or Zurawski must make a facially plausible showing that the arbitral process in his case constituted "a situation where the supposedly neutral arbitrator exhibit[ed] a complete unwillingness to respond, and indifference, to any evidence or argument in support of one of the parties' positions." Id. As described below, however, none of the conduct Zurawski alleges, assumed to be true for this purpose, rises to a sufficient level of impropriety to constitute fraud or corruption under the RLA. Zurawski is merely attempting to retry his case by arguing that the weight of the evidence was in his favor and that the arbitration board's decision against him was in error. Such arguments do not provide a basis for relief under the RLA. Andrews v. Louisville & Nashville R.R. Co., 406 U.S. 320, 325 (1972) (once a party has litigated an issue on the merits before an

---

127 F. Supp. 2d 992 (N.D. Ill. 2001), and Freeman v. Godinez, 996 F. Supp. 822 (N.D. Ill. 1998)). Zurawski is wrong. See, e.g., Twombly, 550 U.S. at 555-57. His misapprehension appears to be the result of his failure to understand, or even cite, Twombly or its progeny.

Regardless, Zurawski's allegations, read individually, do not have the requisite particularity to meet the standard of Rule 9(b). Zurawski seems to concede this point when he states as follows:

> Defendant appears to be attempting to isolate and attack each individual paragraph of Plaintiff's Complaint as being insufficient. Defendant's tactic appears to be an intentional case of missing the forest for the trees, as it were. Perhaps the individual facts in each paragraph taken alone and in isolation and disconnected from one another could be seen as innocuous, not fraudulent, and/or of no consequence. This short sighted view misses the point of the Complaint entirely.

(Pl.'s Resp. 9.) Despite Zurawski's protestation that the fraud or corruption he alleges would be apparent if his allegations were only "viewed collectively" (id. at 8), a large volume of allegations will not satisfy the particularity standard of Rule 9(b) if each of those allegations is itself too general, speculative, or conclusory.

arbitration board under the RLA that party may not relitigate that issue in court). As demonstrated below, Zurawski's argument that the court should set aside the decision on the basis of fraud or corruption is without merit as a matter of law.

The first two categories of allegations of Zurawski's Second Amended Petition, which only dispute the propriety of SEPTA's investigation and SEPTA's preparation for and presentation at the arbitration, do not and cannot constitute allegations of fraud or corruption under the RLA.[6] Such allegations could only be considered to be of the "intrinsic" variety because they involve only the conduct of SEPTA. Pitts, 603 F.Supp. at 1517. In other words, this kind of behavior is not subject to judicial review under the RLA because it is not by a "member" of the arbitration board. Holmes, 1995 WL 334334, at *3 ("Section 153 clearly states that the fraud involved must be a fraud 'by a member of the division making the order.' This can only mean fraud by a member of the Board itself."). Zurawski's allegations of improprieties by SEPTA do not implicate a board member as required by the RLA. Hence, such allegations do not provide the court with a proper basis to set aside the arbitration board's decision.

The third category of allegations of the Second Amended Petition, which dispute the propriety of the conduct of the arbitration board, and Douglas in particular, must also be

---

[6] Such allegations include the following: (1) that SEPTA did not seek a statement from Zurawski and did not allow him to prepare one "without intimidation"; (2) that SEPTA allowed an opposing witness, Andrews, to prepare a statement at his leisure at home; (3) that SEPTA's investigator, Gary Fisher, had been accused of impropriety and covering up information in previous investigations of other matters; (4) that SEPTA called several witnesses who were not made available to Zurawski or his union representatives beforehand for deposition; (5) that SEPTA withheld several non-union witnesses who would have provided testimony in his support; (6) that SEPTA coordinated the testimony of witnesses prior to the arbitration and then blocked inquiry into that coordination by claiming attorney-client privilege; and (7) that SEPTA has improperly rehearsed the testimony of witnesses in other matters. (Second Amended Petition ¶¶ 16-17.)

dismissed with prejudice. Such allegations simply do not rise to the level of fraud or corruption under the RLA.

To begin, none of the allegations of the Second Amended Petition related to the arbitration board's admissibility and credibility determinations involve conduct that is reviewable by the court under the RLA.[7] Lawson v. Nat'l R.R. Passenger Corp., No. 91-0719, 1991 WL 170840, at *3 (E.D. Pa. Aug. 29, 1991) ("'The sufficiency of the evidence comprising the foundation of the Board's decision is not reviewable.'") (quoting Anderson v. Nat'l R.R. Passenger Corp., 754 F.2d 202, 204 (7th Cir. 1984)); see also Monroe v. Consol. Rail Corp., No. 90-0328, 1991 WL 274822, at *3 (E.D. Pa. Dec. 17, 1991) (same). If, as here, an employee and his union representative had the opportunity to submit evidence to the arbitration board and did so, the failure of the submitted evidence to sway the arbitration board to decide the case in a particular way does not require the conclusion that the arbitration board improperly disregarded the evidence. Robinson v. Nat'l R.R. Passenger Corp., No. 93-CV-8376, 1995 WL 444322, at *5

---

[7] Such allegations include all allegations concerning: (1) the arbitration board's rulings on the admissibility of evidence, such as its decision to admit position statements from SEPTA employees and its decision to allow witnesses to be presented to Zurawski for the first time at the arbitration; and (2) the arbitration board's decisions to credit the testimony of some witnesses over the testimony of others, such as its decision to credit the testimony of Zurawski's co-worker over Zurawski's testimony. (Second Amended Petition ¶¶ 16-17.)

Such allegations also include all of Zurawski's allegations that the written decision of the arbitration board is false or inappropriate. (Id. ¶ 16n.) As to the written decision, rather than alleging facts that might rise to the level of fraud or corruption, Zurawski merely inserts the words "falsely" and "inappropriately" in front of criticisms of the arbitration board's determinations. All of the determinations Zurawski cites relate to the arbitration board's admission and weighing of evidence, determinations that are not within the three narrow grounds of review available to the court under the RLA. Merely inserting the words "falsely" and "inappropriately" into the allegations does not make the arbitration board's determinations reviewable as tainted by "fraud or corruption." In fact, Zurawski's allegations regarding the written decision are the kind of bare legal conclusions that will not pass muster under Rule 12(b)(6). Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 555.

(S.D.N.Y. July 26, 1995). The arbitration board may equally easily have found that evidence unpersuasive or outweighed by other evidence. Id. That an arbitration board found a plaintiff's position unpersuasive or lacking in credibility, or that it chose to rely on certain types of evidence and not on others, does not state a claim that the arbitration board reached its decision through fraud or corruption. Lawson, 1991 WL 170840 at *3. Even if an arbitration board makes its determination on grounds entirely independent of a party's arguments, its refusal to entertain some of the party's arguments does not reflect fraud. Smith v. Am. Eagle Airlines, Inc., No. 07-CV-3363, 2008 WL 2600857, at *4 (E.D.N.Y. July 1, 2008) (rejecting claim that arbitration board's "assent" to plaintiff's termination amounted to fraud where decision made clear that arbitration board was not indifferent to plaintiff's arguments, but considered his version of events and found them "not the least bit credible").

In addition, Zurawski's allegation that the arbitration board did not advise him of his right to obtain independent counsel and that he was therefore not represented by an attorney (Second Amended Petition ¶ 16c) is also insufficient, as a matter of law, to state a claim of fraud or corruption under the RLA. The Third Circuit has held that the RLA does not require that an arbitration board advise a plaintiff of his or her right to counsel. United Steelworkers, 648 F.2d at 912 ("failure to secure an express waiver of the right to counsel is not a violation of the Railway Labor Act"). Furthermore, Zurawski does not claim that the collective bargaining agreement between SEPTA and his union required that the arbitration board advise him that he had a right to counsel. It was thus not inappropriate for Zurawski to be represented by officials from his union. In fact, the RLA specifically provides for such representation. 45 U.S.C. § 153 First (j) ("[p]arties may be heard either in person, by counsel, or by other representatives, as they may respectively elect").

- 16 -

Zurawski also alleges that the arbitration board failed to sequester witnesses when it allowed Fisher, the investigator, to attend the hearing and then, even though SEPTA had not identified him as a witness, to testify.  (Second Amended Petition ¶ 16j.)  Zurawski claims that Fisher's presence in the room intimidated other witnesses.  (Id.)  These allegations also fail, as a matter of law, even accepting them as true.  Regardless of whether such allegations could amount to fraud, such fraud could only be of the "intrinsic" variety.  Zurawski and his union representatives could have objected to Fisher's presence in the hearing room if they had so chosen, and they could have objected to testimony by Fisher when he was called as a witness. Pitts, 603 F. Supp. at 1517 ("intrinsic" fraud is not sufficient under the RLA to require a court to set aside a decision because a litigant can bring the alleged improprieties to the arbitration board's attention).  They did not.  (Ex. A 2:8-9 (transcript lists Fisher, a "SEPTA Company Representative," as one of several individuals present at hearing); 26:25-28:15 (arbitration board and parties agree to sequester witnesses before and after their testimony but no party objects to Fisher's presence in hearing room); 123:11-124:2 (Zurawski and his union representatives do not object to testimony of Fisher when he is called as witness).)

Whether Fisher should have been sequestered and whether Fisher should have been allowed to testify even though he had attended the hearing are questions that Zurawski and his union representatives could have and should have addressed during the arbitration itself.  Put another way, Zurawski has waived whatever objections he may have had to Fisher's presence and testimony at the hearing.  United Steelworkers, 648 F.2d at 913 (when the reasons supporting an

objection are known beforehand, a party may not wait to make an objection "until after an unfavorable award has been made").[8]

In addition, even accepting Zurawski's allegations as true, none of the allegations that assert "bias" on the part of Douglas states a claim upon which relief could be granted. (Second Amended Petition ¶¶ 16-21.) An arbitrator's mere "partiality" or "prejudice" does not rise to the level of fraud or corruption under the RLA. See Dement v. Richmond, Fredricksburg & Potomac R.R. Co., 845 F.2d 451, 459 (4th Cir. 1988) (allegation of "prejudice" insufficient ground for judicial review under RLA without some evidence that arbitrator "was involved in a conspiracy to deprive [plaintiff] of his contractual rights"). A claim of "evident partiality" of an arbitrator sufficient under the RLA to justify vacating a decision generally has been limited to cases where the arbitrator had some pre-existing relationship with one of the parties. Bajaj v. Air-India Airlines, No. 90-CV-1122, 1991 WL 130933, at *5 (S.D.N.Y. July 10, 1991) (citing Andros Compania Maritima, S.A. v. Marc Rich & Co., 579 F.2d 691, 701-702 (2d Cir. 1978)). Zurawski's allegations do not approach this exacting standard. He has not made any allegations that Douglas had an improper pre-existing relationship with any of the parties. Accordingly, his allegations of bias fail as a matter of law.[9]

_____

[8] Similarly, to the extent Zurawski's complaint attempts to rely on the allegation in Little's dissent that Douglas refused to order an executive session of the arbitration board to resolve outstanding issues (Second Amended Petition ¶ 17g), Zurawski did not raise that objection during the hearing. Thus, even were Douglas's refusal to be considered evidence of fraud or corruption (on its face, the allegation does not rise to that level), any objection could have and should have been raised during the hearing and is now waived. United Steelworkers, 648 F.2d at 913.

[9] Such allegations include the claim that Douglas was biased against Zurawski for refusing to accept a settlement offer that Douglas wished Zurawski to accept. (Second Amended Petition ¶ 17c.) Zurawski has not provided any factual basis, other than mere conjecture, that Douglas's actions were influenced by a corrupt motive. This allegation does not involve the kind of "extrinsic" fraud where the hearing will go against the employee no matter what the merits.

The allegation that Douglas did not allow Zurawski sufficient time to present his closing statement is undermined by the allegation itself. (Second Amended Petition ¶¶ 16l, 17d.) The allegation states that Douglas would have allowed Zurawski more time if Zurawski wished but would have required the arbitration to be continued until December 2008. (Id. ¶ 16l.) It was Zurawski who chose to complete his closing statement that day, not Douglas. (Ex. A 171:4-5 (Zurawski asserted to Douglas, "I can finish it up in less than fifteen seconds").) There is no legitimate claim that Douglas prevented Zurawski from calling more witnesses, because at that point in the hearing Zurawski and his union representatives had already: (1) stated that the only witness they were going to call was Zurawski; and (2) after Zurawski testified, confirmed that they had no additional witnesses to present. (Id. at 140:8-12, 20-22; 166:14-23; 169:14-16.) Douglas merely expressed concern that Zurawski's closing statement was straying into topics unrelated to the topics addressed earlier in the arbitration. (Id. at 170:20-25.) Douglas stated that if Zurawski sought to address such topics it would be unfair not to allow SEPTA an opportunity to address those topics too, which would likely require significant additional time not available that day. (Id. at 170:20-171:14.) Douglas's expression of this concern does not rise to the level of fraud or corruption sufficient to require the court to vacate the arbitration board's decision. Zurawski has not cited any authority to establish that it would have been improper for Douglas to

_____

Pitts, 603 F. Supp. at 1517. Moreover, Zurawski's claim that Douglas violated the terms of the collective bargaining agreement between SEPTA and Zurawski's union by attempting to persuade the parties to settle (Second Amended Petition ¶¶ 18-21) does not state a claim under the RLA. Article III, Section 403(j), of the collective bargaining agreement states that "[n]o case may be withdrawn after hearing thereon has begun except by mutual consent of the parties." (Ex. D.) Thus, after the hearing had begun, no settlement could have violated the collective bargaining agreement because any such settlement would have had to have been approved by Zurawski's union. Furthermore, Zurawski has not cited any authority, and the court has found none, to support the claim that an arbitrator's attempt to help parties settle a dispute amounts to fraudulent conduct under the RLA.

allow SEPTA additional time if Zurawski raised new topics in his closing statement. Furthermore, Douglas did not prevent Zurawski from raising any issues. Zurawski could have chosen to continue to raise new topics in his closing statement and to risk the need to postpone the hearing to allow SEPTA the opportunity to defend itself. In other words, Douglas's expression of concern does not exhibit "a complete unwillingness to respond, and indifference, to any evidence or argument in support of one of the parties' positions." Pac. & Arctic Ry., 952 F.2d at 1148. The opposite is true: Douglas offered Zurawski the opportunity to continue to raise new topics in his closing statement merely with the caveat that the hearing might have to be continued at a later date.[10]

In sum, Zurawski's allegations of fraud and corruption fail "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Zurawski offers nothing more than a blend of suspicion and surmise to support a claim of fraud and corruption. Such a showing is insufficient to meet the standards of Rule 8(a)(2), Rule 9(b), and the RLA. Accordingly, his complaint must be dismissed with prejudice.

---

[10] Similarly, Zurawski's general allegation that Douglas "spoke to the witnesses before they testified at the Arbitration" (Second Amended Petition ¶ 16i) does not rise to the level of fraud or corruption under the RLA. Although courts have held that extraordinary *ex parte* conversations might rise to the level of fraud or corruption under the RLA, see Pac. & Arctic Ry., 952 F.2d at 1148-49 (numerous *ex parte* contacts between neutral board member and witness, who was also union-chosen board member, went far beyond the usual informality of arbitrations under the RLA and rose to the level of fraud), Zurawski has not actually alleged that Douglas engaged in any *ex parte* conversations. In fact, Zurawski has not identified with whom Douglas spoke, what was said, when they said it, where it was said, and how it may have tainted Douglas's decision. Zurawski's general allegation that Douglas spoke to witnesses does not state a claim upon which relief could be granted. Twombly, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level") (citations omitted).

**IV. Conclusion**

 Instead of alleging facts sufficient to show fraud or corruption, Zurawski is attempting to retry his case by arguing that the weight of the evidence was in his favor and the arbitration board's decision against him was in error.  Zurawski cloaks his dissatisfaction with the arbitration board's findings and conclusions with speculative and conclusory allegations of fraud and corruption.  None of Zurawski's allegations rises to the level making a facially plausible showing of the narrow standard of "fraud or corruption" under the RLA required for the court to set aside the decision of the arbitration board.  The court will therefore grant SEPTA's motion and will dismiss the Second Amended Petition with prejudice.  An appropriate order follows.